FILED'08 MAY 20 10:25USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN A. JONES,

        Plaintiff,

v.

CHARLES PORÉ, et al.,

        Defendants.

Civ. No. 06-3096-PA

**OPINION AND ORDER**

**PANNER, J.**

Plaintiff Susan A. Jones brings this action against defendants Charles Poré, Lake County Deputy Sheriff; Philip McDonald, Lake County Sheriff; and Lake County (the County defendants).[1] Plaintiff claims that the County defendants deprived her of her right to be arrested for probable cause; her right not to be subjected to unreasonable seizures of her person; her right not to be deprived of liberty or property without due process of law; her right to equal protection; her right to a fair trial; her right not to incriminate herself; and her right

---

[1] I have dismissed plaintiff's claims against her ex-husband, James Parmelee; Parmelee's girlfriend, Deanne E. Fulstone; and Parmelee's parents, Perry and Lois Parmelee.

1 - OPINION AND ORDER

to counsel. Plaintiff also brings state law claims for malicious prosecution and false arrest.

The County defendants move for summary judgment. I grant the motion.

## BACKGROUND

### I. Poré Serves a Restraining Order on James Parmelee

Plaintiff and James Parmelee were married in 1998. They lived in a mobile home on a ranch owned by Parmelee's family.

In August 2004, plaintiff obtained a retraining order against Parmelee. On August 24, 2004, Poré served the restraining order on Parmelee at the mobile home. Plaintiff was present but remained at a distance.

After serving Parmelee, Poré allowed him to remove several bags of personal property from the mobile home. Poré did not check the content of the bags before Parmelee drove away with them. Plaintiff states, "Parmelee drove in my direction and when he passed me, he laughed in a very animated manner."

When plaintiff entered the mobile home shortly afterwards, she saw that Parmelee had removed items that either belonged to her or were marital property. Parmelee had taken a personal computer, a shoe from each pair of plaintiff's shoes, as well as jewelry, photographs, and other mementos from plaintiff's previous marriage.

Plaintiff told Poré that Parmelee had taken her personal property. Poré said that because a divorce was pending,

2 - OPINION AND ORDER

plaintiff's complaint was a civil, not criminal, matter, and the judge presiding over the divorce would decide ownership of the personal property. Poré refused to refer plaintiff's complaint to the District Attorney for a criminal investigation.

## II. Plaintiff Returns to the Mobile Home

Plaintiff and Parmelee separated in September 2004. The restraining order was lifted.

Parmelee moved back into the mobile home. Plaintiff left and stayed temporarily with friends and family members. Around November 20, 2004, Parmelee's girlfriend, Deanne Fulstone, moved into the mobile home.

On November 25, 2004, while plaintiff was driving to her daughter's house for Thanksgiving, plaintiff decided to take some of her personal property from the mobile home. Plaintiff correctly assumed that Parmelee would be away because his family usually visited relatives on Thanksgiving.

Soon after entering the mobile home, plaintiff realized that another woman had moved in with Parmelee. Plaintiff lost her temper. She threw eggs on the walls, poured used kitty litter, milk, catsup, and other liquids on furniture and carpeting, destroyed plants owned by Fulstone, and damaged cassette tapes, a glass cross, and electronic items. She took three pairs of Parmelee's boots, one dog whose ownership was disputed, and two hunting dogs that she considered property of the marriage.

/ / / /

Plaintiff also took an electric fence charger and a leather hat that belonged to Fulstone.

Plaintiff drove to her daughter's house in Klamath Falls. She told her children and her ex-husband, Jon Jones, what she had done at the mobile home. Plaintiff said that she took property as payback for Parmelee's previous removal of property. Plaintiff was contrite about the damage she had caused.

III. **The Investigation of the Mobile Home Incident**

Parmelee returned to his mobile home later that afternoon. At about 6 p.m., Parmelee reported to Poré that "property was stolen from his workshop, his dogs were stolen from their cages, his pickup truck had been entered without force and property stolen, and his house was burglarized and property damaged or destroyed." Poré Dec. ¶ 3. Parmelee believed that plaintiff was responsible. He told Poré that plaintiff had called him several times on November 24 and 25, leaving messages on his answering machine; that plaintiff knew Parmelee would be away on Thanksgiving; that there were no signs of forced entry; that the driver's side door of his pickup truck was left open, and plaintiff would have known where Parmelee kept a key to the truck; and that messages plaintiff had left on Parmelee's answering machine had been erased. Parmelee noted other damage suggesting plaintiff's responsibility, such as the uprooting of a rose bush that had been an anniversary gift.

/ / / /

Poré visited the mobile home on November 26 to view the damage in daylight. He returned to the mobile home on November 29. One of the neighbors reported seeing a pickup truck resembling plaintiff's truck driving away from the mobile home around noon on November 25.

Poré asked Tim Adams, a deputy sheriff, to interview plaintiff's ex-husband, Jon Jones. Jones told Adams that plaintiff had admitted that she "lost it" and had thrown eggs, overturned plants, and taken property from the mobile home. Adams formally interviewed Jones as well as two of plaintiff's children. They all reported to Adams that plaintiff had admitted going to the mobile home, removing property, and causing damage.

On December 1, 2004, Poré learned that plaintiff was staying either in Klamath Falls or Medford. Poré had business in Medford, so he decided to visit both locations. Poré left a message on plaintiff's cell phone asking to talk to her. Plaintiff did not respond.

## IV. The Arrest of Plaintiff

### A. Poré's Description of Plaintiff's Arrest

Poré drove to the Klamath Falls house of Kasey Jones, one of plaintiff's children. Poré saw plaintiff's pickup truck parked in front. When Poré knocked on the door, plaintiff answered. Poré recognized plaintiff from the day he had served the restraining order on Parmelee. Poré was not in uniform but he was wearing a black vest with an embroidered badge bearing his

5 - OPINION AND ORDER

name and the words "Lake County Sheriff." Under his vest, he wore a shoulder holster that was not visible to plaintiff.

Poré showed his badge to plaintiff and identified himself as a deputy sheriff. Plaintiff stepped outside of the house and closed the door behind her. Poré told plaintiff that he wanted to talk to her about what had happened at Parmelee's mobile home. Plaintiff initially said she didn't know what Poré was talking about. Poré said that he wanted to return the dogs to Parmelee, and that they could deal with other issues later. Plaintiff said that her attorney had told her not to talk to Poré.

Poré decided that he had probable cause to believe that plaintiff had committed crimes on November 25, 2004, so he told plaintiff that she was under arrest for theft. Plaintiff asked, "Theft of what?" Poré said the property from the mobile home. He took plaintiff's left hand and placed a handcuff on it, and told plaintiff to turn around and put her hands behind her back. Plaintiff initially did not comply. Poré stepped farther behind plaintiff and took her right hand and pulled it behind her back and placed it in the handcuff. According to Poré, "This was a routine arrest and no force was required." Poré Dec. ¶ 19.

Poré states that plaintiff complained as he was handcuffing her that he had no right to "mishandle" her. When plaintiff asked again why she was being arrested, Poré said he was arresting her for theft and would transport her to the Lake County Jail. Poré told plaintiff's daughter, Kasey Jones, that

6 - OPINION AND ORDER

the drive to the jail would be an hour and a half and that booking would take another hour.

Poré was driving a Dodge Ram pickup truck. When Poré asked plaintiff if she needed help getting in the truck, she told him not to touch her. Plaintiff was able to get in the truck unassisted. Poré refused plaintiff's request to be handcuffed with her arms facing forward. Poré states that he left plaintiff handcuffed behind her back because of "the vehicle being used for transport and the uncertain reaction given the history of plaintiff's reported actions." Poré Dec. ¶ 22.

Poré states that during the drive to the jail, plaintiff initially complained that the handcuffs were uncomfortable, after he had checked them for secureness and tightness. Poré saw that plaintiff could move her hands to the side so that she didn't have to lean against them. He states that he "knew there would be no significant impairment from the cuffs against her wrists other than some general discomfort from being in the handcuffs." Poré Dec. ¶ 23. Poré states that he would have stopped the truck to adjust the cuffs if he had seen signs of reduced blood circulation.

After Poré drove plaintiff to the county jail, he had no further contact with her. Poré completed a probable cause affidavit to support the arrest. Plaintiff was charged with first-degree criminal mischief; first-degree theft; first- and second-degree burglary; and unlawful entry into a motor vehicle.

7 - OPINION AND ORDER

The next morning, the Honorable Roxanne Osborne, a state circuit court judge, signed the probable cause affidavit, finding that probable cause existed to believe that plaintiff had committed the crimes charged.

### B. Plaintiff's Description of Her Arrest

Plaintiff states that when she answered the door to her daughter's house and told Poré that her attorney had advised her not to talk, Poré's "face became flushed and he appeared to become visibly angry that I was refusing to be interrogated." Plaintiff's Dec. at 7. She states that Poré was "manhandling and hurting her," but gives no details of the alleged mistreatment. At her deposition, plaintiff testified that she did not tell Poré that she had preexisting shoulder injuries. Plaintiff states that she sat in the truck for almost two hours in an uncomfortable position, and that the handcuffs left marks on her wrists that were visible for several days.

## V. Post-Arrest Events

On March 18, 2005, a grand jury indicted plaintiff for first-degree criminal mischief, a Class C felony; and second-degree theft, a Class A misdemeanor. The criminal mischief charge alleged that plaintiff had unlawfully damaged Fulstone's property worth more than $750, including plants, mattresses, a futon, a ceramic pot, cassette tapes, and a stained glass cross. The theft charge alleged that plaintiff had stolen Fulstone's

/ / / /

8 - OPINION AND ORDER

electric fence charger and leather hat, which were worth more than $50.

Plaintiff argues that the Lake County District Attorney, David Schutt, "refused and declined to file any charges against [plaintiff] for the crimes" for which Poré arrested her. By declaration, Schutt responds that his office often does not file charges immediately after an arrest because he needs time to investigate the allegations. Schutt states that he "ultimately elected not to proceed on all of the charges identified by Deputy Poré in his arresting document." Schutt Dec. ¶ 3. Schutt states that although he believed there were sufficient facts to support all of the charged offenses, he chose to focus only on the alleged crimes plaintiff had committed against Fulstone's property because a jury might be reluctant to find plaintiff guilty of crimes involving marital property.

Plaintiff notes that the grand jury proceedings were not reported or tape-recorded. She argues that Schutt and the Lake County Sheriff intended "to keep any state or federal judge from reviewing a record of the 'probable cause' for an arrest." Pltf.'s Mem. at 4. Schutt responds that his standard practice is not to have grand jury proceedings recorded, other than asking grand jurors to keep notes. He states that this practice is solely his decision. Schutt is not a defendant in this action.

## VI. Diversion Agreement

On August 17, 2007, plaintiff pleaded "no contest" to both

9 - OPINION AND ORDER

criminal charges at a hearing before the Honorable Richard B. Rambo, a state circuit court judge. For each count of the indictment, Judge Rambo asked plaintiff whether she understood that "a plea of no contest is equivalent to a plea of guilty?" Warren Dec., Ex. 4, at 4 (transcript of plea hearing). Plaintiff responded, "Yes, sir." Under the diversion agreement, the charges against plaintiff are to be dismissed if plaintiff obeys the law, stays away from James Parmelee and Fulstone, and pays restitution in an amount determined by the court.

**STANDARDS**

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**DISCUSSION**

I. **Civil Rights Claims**

   A. **Conspiracy Claim**

Plaintiff's first claim is that the Parmelee defendants and the County defendants conspired to deny her of her rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.

To prove that a conspiracy existed, the plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional

10- OPINION AND ORDER

rights." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (citations omitted). Each individual does not need to know the plan; sharing the common purpose of the conspiracy is sufficient. Id.

Here, plaintiff has not shown evidence of a conspiracy to violate her civil rights. In any event, a conspiracy claim under § 1983 is not actionable unless there has been a deprivation of the plaintiff's constitutional rights, and, as discussed below, I conclude that no such deprivation occurred. See Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989).

To the extent that plaintiff is bringing her conspiracy claim under 42 U.S.C. § 1985(3), the claim cannot survive summary judgment. The elements of a 1985(3) claim are: (1) existence of a conspiracy to deprive the plaintiff of equal protection under the law; (2) an act in furtherance of the conspiracy; and (3) a resulting injury. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1141 (9th Cir. 2000) (citation omitted). The conspiracy must be motivated by a racial or otherwise class-based "invidious discriminatory animus." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993). Section 1985(3) does not extend to classes beyond race unless the government has determined that class members "require and warrant special federal assistance in protecting their civil rights." Orin v. Barclay, 272 F.3d 1207, 1217 n.4 (9th Cir. 2001).

/ / / /

11- OPINION AND ORDER

Here, plaintiff has not presented evidence from which a reasonable jury could find that her arrest and the subsequent events were part of a conspiracy against plaintiff based on her sex or age. Plaintiff argues that she was arrested for conduct comparable to Parmelee's previous removal of property from the mobile home. Plaintiff contends the decision to prosecute her, but not Parmelee, is evidence that the County defendants were biased against her. However, plaintiff's conduct was not equivalent to Parmelee's conduct. Plaintiff stole and damaged property that belonged to Fulstone. The decision to prosecute plaintiff, without more, does not show bias against plaintiff because of her sex or age.

**B. Warrantless Arrest**

Plaintiff claims that her arrest by Poré on December 1, 2004, violated her Fourth Amendment rights.

As a state official, Poré may be personally liable under 42 U.S.C. § 1983 if he acted under color of state law in depriving plaintiff of a federal right. Romano v. Bible, 169 F.3d 1182, 1185-86 (9th Cir. 1999). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." To show that an official has violated the Fourth Amendment, a plaintiff must show that a search or seizure occurred, and that the search or seizure was unreasonable. See Brower v. County of Inyo, 489 U.S. 593, 599 (1989).

12- OPINION AND ORDER

Here, plaintiff contends that Poré lacked probable cause to arrest her. "Probable cause means more than a bare suspicion; it exists when the officer's knowledge of reasonably trustworthy information is sufficient to warrant a prudent person to believe that an offense has been or is being committed." Graves v. City of Coeur D'Alene, 339 F.3d 828, 841 (9th Cir. 2003). The court should examine the reasonableness of the arrest in light of the totality of the "'facts and circumstances' actually known to the officer" when he made the arrest. Mendocino Envtl. Ctr. v. Mendocino County, 14 F.3d 457, 462 (9th Cir. 1994) (quoting Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993)).

Here, Poré had probable cause to arrest plaintiff for theft and malicious mischief. Poré's investigation indicated that plaintiff was responsible for removing and damaging property in the mobile home. Plaintiff implies that Poré was angry at her because she refused to talk to him. However, Poré's state of mind is not relevant so long as his actions were objectively reasonable. John v. City of El Monte, 515 F.3d 936, 939 (9th Cir. 2008).

Poré arrested plaintiff just outside of her daughter's house. "The Fourth Amendment's prohibition on warrantless entry into an individual's home does not apply to arrests made at the doorway, because the doorway is considered a public place." LaLonde v. County of Riverside, 204 F.3d 947, 955 (9th Cir.

////

13- OPINION AND ORDER

2000). Poré did not force or trick plaintiff to step outside of the house before arresting her.

### C. Excessive Force

Plaintiff contends that Poré used excessive force during the arrest. Although determining whether force was excessive generally presents issues of fact, a defendant may prevail on summary judgment "if the district court concludes after resolving all facts in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Alexander v. County of Los Angeles, 64 F.3d 1315, 1322 (9th Cir. 1995).

"The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007). (citing Tennessee v. Garner, 471 U.S. 1, 7-8 (1985)). "The question in all cases is whether the use of force was 'objectively reasonable in light of the facts and circumstances confronting' the arresting officers." Id. (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). The Ninth Circuit has explained that

> [t]o determine whether a specific use of force was reasonable, we must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." [Graham, 490 U.S. at 396 (internal quotation marks omitted)]. Relevant factors to this inquiry include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an

14- OPINION AND ORDER

> immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.; see also Forrester v. City of San Diego, 25 F.3d 804, 806 n.2 (9th Cir. 1994).

Blankenhorn, 485 F.3d at 477.

Plaintiff has failed to show a disputed issue of material fact regarding excessive force. It's true that excessively tight handcuffing can violate the Fourth Amendment. See, e.g., Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004) (handcuffing caused nerve damage, forcing the plaintiff to give up dentistry). Here, when plaintiff complained that the handcuffs were uncomfortable, Poré checked and determined that the cuffs were not too tight. Although plaintiff complains that the handcuffs left marks visible for several days, plaintiff has not presented evidence that she needed medical attention or suffered any injury because of the handcuffs. I conclude that Poré's decision to handcuff plaintiff during the drive to jail was not unreasonable under the circumstances. "Police officers . . . are not required to use the least intrusive degree of force possible. Rather, . . . the inquiry is whether the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene." Forrester v. City of San Diego, 25 F.3d 804, 807-08 (9th Cir. 1994).

Nor has plaintiff shown that the failure to transport her to the nearest jail was unreasonable.

15- OPINION AND ORDER

In light of these rulings, I need not address whether Poré is entitled to qualified immunity. See Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001).

### D. Miscellaneous Claims

Plaintiff brings claims for violations of her Fifth and Sixth Amendment rights.

Because plaintiff's statements (or failure to make statements) were not used against her in court, she has no claim under the Fifth Amendment. Nor has plaintiff shown a violation of her Sixth Amendment right to counsel. She was not denied access to counsel once prosecution was commenced.

Plaintiff has not shown a violation of her equal protection rights. The decision to prosecute plaintiff while not prosecuting Parmelee was reasonable.

The County and Sheriff McDonald are not liable. "Neither a municipality nor a supervisor . . . can be liable under § 1983 where no injury or constitutional violation has occurred." Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001).

## II. State Law Claims

Plaintiff brings state law claims for false arrest and malicious prosecution.

### A. Statute of Limitations

The County defendants move for summary judgment on plaintiff's false arrest claim based on the two-year statute of limitations for actions against a public entity, ORS 30.275(9).

16- OPINION AND ORDER

Under ORS 12.020, unless a defendant is served within sixty days of the filing of the complaint, the action commences for statute of limitations purposes on the date of service, not the date of filing.

Plaintiff's arrest occurred on December 1, 2004. Plaintiff filed the complaint on November 29, 2006, but did not serve the County defendants until at least February 26, 2007, more than 60 days after the day of filing. For Oregon statute of limitations purposes, the complaint was not filed until February 26, 2006, more than two years after December 1, 2004 arrest.

Plaintiff relies on the date of filing in contending that her state law claims are timely. Although the date of filing is the operative date for plaintiff's federal claims, the date of service is the operative date for her state law claims. See Foster v. County of Lake, Civ. No. 06-3020-PA, slip op. (D. Or. July 23, 2007). Even if plaintiff's false arrest claim was timely, it would fail because there was probable cause to arrest plaintiff. Hart v. Parks, 450 F.3d 1059, 1069 (9th Cir. 2006).

### B. Malicious Prosecution

The malicious prosecution claim arguably arose after December 1, 2004, so I address that claim separately. To prevail on a malicious prosecution claim, plaintiff must show that the criminal proceedings were terminated in her favor. Waldner v. Dow, 128 Or. App. 197, 200, 876 P.2d 785, 786 (1994). She must also show that probable cause was lacking. Id.

17- OPINION AND ORDER

Here, plaintiff has failed to show that the proceedings were terminated in her favor. Although the diversion agreement may result in dismissal of the criminal charges, plaintiff's no-contest plea is equivalent to a guilty plea under Oregon law. ORS 135.345 ("A judgment following entry of a no contest plea is a conviction of the offense to which the plea is entered."). Judge Rambo so advised plaintiff during the hearing on the diversion agreement. Plaintiff's no-contest plea was not a termination of the criminal proceeding in her favor.

The malicious prosecution claim also fails for the independent reason that probable cause existed for plaintiff's criminal prosecution.

## CONCLUSION

Defendants' motion for summary judgment (#22) is granted.

DATED this \_\_\_20\_\_\_ day of May, 2008.

OWEN M. PANNER
U.S. DISTRICT JUDGE

18- OPINION AND ORDER